# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of:<br><br>Information associated with Google email accounts described in Attachment A. | )<br>)<br>)<br>)<br>)<br>)    Case No. _18-826M (NJ)_ |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Information associated with Google email accounts described in Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

- ■ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 21 USC §§ 829(e), 841(a)(1), and 846 (distribution of controlled substances), and 21 USC §§ 841 (h) and 843(c)(2)(A) (distribution of controlled substances by means of the internet)

The application is based on these facts: See attached affidavit.

☑ Delayed notice of _____ days (give exact ending date if more than 30 days: _11/7/2018_ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Kellen J. Williams, DEA Special Agent
Printed Name and Title

Sworn to before me and signed in my presence:

Date: _March 27, 2018_

_____
Judge's signature

City and State: Milwaukee, Wisconsin

Nancy Joseph _____, U.S. Magistrate Judge
Printed Name and Title

## AFFIDAVIT IN SUPPORT OF
## APPLICATIONS FOR SEARCH WARRANTS

I, Kellen J. Williams, being first duly sworn, hereby depose and state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for search warrant for information associated with email accounts that are stored at premises controlled by Google, Inc. ("Google") an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     I am a Special Agent with the Drug Enforcement Administration (DEA), having been so employed since September 2012. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Sections 2516(1)(e), 1956, and 1957, and Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 856, 952, and 963. I have received specialized training on drug identification, surveillance operations, firearms handling, report writing techniques, confidential source handling, Title III wire interceptions and execution, search warrant execution, arrest procedures, and court proceedings.

3. Based on my training, experience, and participation in drug trafficking and computer related investigations, I know and have observed the following:

a. I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin as well as in other areas of the United States and internationally;

b. I am familiar with the coded language utilized over the telephone and other electronic communications to discuss drug trafficking and know that the language is often limited, guarded and coded. I also know the various code names used to describe controlled substances;

c. I know drug dealers often put telephones in the names of others (nominees) in order to distance themselves from telephones that they use to facilitate drug distribution. Because drug traffickers go through many telephone numbers, they often do not pay final bills when they are done using a telephone number and then are unable to put another line in the name of that subscriber;

d. I know drug traffickers often purchase and/or title assets in fictitious names, aliases or the names of relatives, associates or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in the names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

e. I know drug traffickers must maintain on-hand large amounts of currency to include currency stored in financial accounts readily accessible in order to maintain and finance their ongoing drug business;

f. I know it is common for drug traffickers to maintain books, records, receipts, notes ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale and distribution of controlled substances. The aforementioned book, records, receipts, notes, ledger, etc., are maintained where the traffickers have ready access to them. These may be in paper form as well as in digital form on computers, Smartphones, cellphones, and other electronic media or electronic storage devices;

g. I know it is common for large-scale drug traffickers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, their businesses and/or other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities;

h. I know it is common for persons involved in drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys and money

2

wrappers. These items are maintained by the traffickers within residences, businesses or other locations over which they maintain dominion and control, as well as in digital form on computers, Smartphones, cellphones, and other electronic media or electronic storage devices;

i.      I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), pagers, computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

j.      I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts and otherwise legitimate businesses which generate large quantities of currency;

k.      I know drug traffickers commonly maintain addresses or telephone numbers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization in papers and books  as well as in digital form on computers, Smartphones, cellphones, and other electronic media or electronic storage devices;

l.      I know drug traffickers take or cause to be taken photographs or videos of themselves, their associates, their property and their drugs. These traffickers usually maintain these photographs or videos in their possession, often in digital form on computers, Smartphones, cellphones, and other electronic media or electronic storage devices;

m.      I am familiar with computers, cellular telephones, Smartphones, pagers and their uses by drug traffickers to communicate with suppliers, customers, and fellow traffickers; Drug traffickers use these devices to record their transactions and aspects of their lifestyle related to drug dealing, whether in the form of voicemail, email, text messages, video and audio clips, floppy disks, hard disk drives, thumbnail drives, CD's, DVD's, optical disks, Zip disks, flash memory cards, Smart media and any data contained within such computers or cellular telephones, electronic storage media and other settings particular to such devices; I know that such devices automatically record aspects of such communications, such as lists of calls and communications, and any particularized identification assigned to those source numbers or email addresses by the owner of the devices; and

n.      I know the following information can be retrieved to show evidence of use of a computer or Smartphone to further the drug trade: system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; computer media and any data contained within such media; operating system software, application or access program disks, manuals, books, brochures, or notes, computer access codes, user names, log files, configuration files, passwords, screen names, email addresses, IP addresses, and SIM cards.

3

4.     This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

5.     Because this affidavit is submitted for the limited purpose of securing authorization for the requested search warrants, I have not included each fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish probable cause for the requested warrants. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of violations of Title 21, United States Code, Sections 829(e), 841(a)(1), and 846 (Distribution of Controlled Substances), and Title 21, United States Code, Sections 841(h) and 843(c)(2)(A) (Offenses involving distribution of Controlled Substances by means of the Internet) have been committed by the users of **TARGET ACCOUNT 1, TARGET ACCOUNT 2, TARGET ACCOUNT 3,** and **TARGET ACCOUNT 4,** including, but not limited to, "Carl Johns," "Michael Richardson," "Ann Moore," and "Benjamin Smith." There is also probable cause to search the locations described in Attachment A for fruits, evidence and instrumentalities of these crimes further described in Attachment B.

## II.     STATUTORY BACKGROUND

6.     The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 amended the Controlled Substances Act to address online pharmacies, codified at Title 21, United States Code (U.S.C.), § 829. No controlled substance that is a prescription drug as determined by the Federal Food, Drug and Cosmetic Act may be delivered, distributed, or dispensed by means of the Internet

4

without a valid prescription, as required by Title 21, Code of Federal Regulations (C.F.R.) § 1306.09(a). *See* Title 21, U.S.C. § 829(e), § 841(a)(1) (Distribution of Controlled Substances); 21 U.S.C. § 841(h), § 843(c)(2)(A) (Offenses involving distribution of Controlled Substances by means of the Internet).

> According to Title 21 U.S.C. § 829, the term "valid prescription" means a prescription that is issued for a legitimate medical purpose in the usual course of professional practice by a practitioner who has conducted at least 1 in-person medical evaluation of the patient or a covering practitioner. The term "in-person medical evaluation" means a medical evaluation that is conducted with the patient in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The term "covering practitioner" means, with respect to the patient, a practitioner who conducts a medical evaluation (other than an in-person medical evaluation) at the request of a practitioner who has conducted at least 1 in-person medical evaluation of the patient or an evaluation of the patient through the practice of telemedicine within the previous 24 months and is temporarily unavailable to conduct the evaluation of the patient.

7.     The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 also added new provisions to prevent the illegal distribution of controlled substances by means of the Internet, including registration requirements of online pharmacies, Internet pharmacy website disclosure information requirements, and prescription reporting requirements for online pharmacies. According to C.F.R. § 1301.11(b):

> As provided in sections 303(f) and 401(h) of the Act (21 U.S.C. 823(f) and 841(h)), it is unlawful for any person who falls within the definition of "online pharmacy" (as set forth in section 102(52) of the Act (21 U.S.C. 802(52)) & § 1300.04(h) of this chapter) to deliver, distribute, or dispense a controlled substance by means of the Internet if such person is not validly registered with a modification of such registration authorizing such activity

5

(unless such person is exempt from such modified registration requirement under the Act or this chapter).

8.      According to DEA records, American Pharmacies Online (a primary target of this investigation) is not a registered online pharmacy.

### III.    PROBABLE CAUSE

9.      On February 17, 2018, the Oconomowoc (Wisconsin) Police Department was dispatched to 1346 Bluebird Drive, Oconomowoc, for a subject with a possible self-inflicted gunshot wound. Upon arrival, officers found Stephen Holder ("Holder") deceased in a bedroom of the residence with a self-inflicted gunshot wound. During the death investigation, detectives discovered Holder had an addiction to several medications, to include Tramadol, Ambien, Klonopin, and others. Detectives spoke with Holder's girlfriend and ex-wife, and also reviewed Holder's cellular telephone messages, e-mail and internet browsing history. Detectives found that Holder was being contacted by several different online pharmaceutical distributors. The distributors were reaching out to Holder on a regular basis via e-mail, telephone calls, and even text messages. Some of the text messages advised Holder that if he didn't like or couldn't afford some medications, he should just try others.

10.      In March of 2018, detectives with Oconomowoc Police Department contacted the Milwaukee District Office of the DEA, to discuss their aforementioned investigation. Based on this information, the Milwaukee District Office initiated an investigation into the internet pharmacy AMERICAN PHARMACIES ONLINE, and its affiliates, located at www.bestshop4all.biz, which advertises for sale controlled and non-controlled pharmaceuticals, including schedule IV controlled substances, without requiring a prescription for such substances. Examination of public internet resources revealed that NANA BAQRADZE, ("BAQRADZE"), with e-mail "nana.baqradaze@yandex.com," is affiliated with the domain www.bestshop4all.biz.

6

BAQRADZE lists a registration address located in the country of Georgia. Additionally, a public internet search revealed "nana.baqradaze@yandex.com" registered several other pharmaceutical websites.

11. On March 16, 2018, case agents met with the ex-wife of Holder at the Oconomowoc Police Department, who is controlling the estate of Holder. The ex-wife provided written consent to search the cellular telephone and two email accounts belonging to Holder. An analysis of the cellular telephone and accounts revealed several contacts with a representative from AMERICAN PHARMACIES ONLINE.

12. For example, on February 9, 2018, at approximately 8:31 a.m., Holder, with e-mail account sjholder1@att.net, received an email from Carl JOHNS ("JOHNS"), using e-mail account **johns.carl35@gmail.com** ("**TARGET ACCOUNT 1**"), titled "Confirmation mail – VIP Department (Carl Johns)." The email contained a confirmation for the purchase of 30 Ambien 10mg pills for $183. Holder paid with a credit card and used the address 1346 Bluebird Dr, Oconomowoc, WI for the shipment. At approximately 8:46 a.m., Holder replied to the e-mail **TARGET ACCOUNT 1** stating, "This needs to ship as soon as possible... I am out of the this med and in very big need! Regards, Stephen." At approximately 8:49 a.m., Holder received an email from JOHNS at the **TARGET ACCOUNT 1** that stated, "Order was charge successfully. Your file will be passed to the shipping department. Thanks, Carl." The signature block of the email contained the name Carl L Johns, Senior Accounts Manager, VIP Department of American Pharmacies Online and the affiliate websites.

13. On February 16, 2018, at approximately 5:54 a.m., Holder replied to the e-mail **TARGET ACCOUNT 1** stating, "Carl: Can I please get the shipping number if this parcel and where it us?" At approximately 6:03 a.m., Holder received an email from JOHNS at the **TARGET**

7

**ACCOUNT 1** that stated, "Hello Stephen, Hope you are doing great! LS803814774CH. This is the tracking number for you recent order from VIP Department. Packages are on its way to you from Switzerland. Please visit USPS.COM. Thanks kindly, Carl."

14.     A public query of USPS.com revealed package LS803814774CH was delivered on March 5, 2018, to Oconomowoc, WI. The history of the parcel showed it was accepted on February 14, 2018, in Switzerland.

15.     On February 16, 2018, at approximately 11:23 p.m., Holder sent an email to JOHNS at the **TARGET ACCOUNT 1** stating, "Hi Carl: Good news 1 parcel arrived. However I was to get 120 of the zolpidem (120 + 30) and 75 (60 +15) of the klonopin. Those extra pills were not included I parcel (sic). Could you please make a not to be e those set out to me yet… Hope that's not at issue… only sending 45. Hope to hear back on your thoughts…" On February 19, 2018, Holder received an email from JOHNS at the **TARGET ACCOUNT 1** that stated, "Hello Stephen, Great to see your email! Thank you for bringing this to my attention! I will definitely ask my Customer Service to take care of this ASAP. Please expect a call from them within next 24 hours! With Respect, Your agent, Carl."

16.     A review of Holder's cellular telephone's internet browser revealed an open tab for www.BestShop4all.biz. On the page was a confirmation for Order #1076258640, Customer Name: Stephen Holder, Shipping address: 1346 Bluebird Dr. Oconomowoc 53066 WI US, Ordered Items: Ambien Generic 10 mg, 120 Pills + 30 bonus, $305, and Klonopin Generic 2mg, 60 pills + 15 bonus, $180. Case agents believe this order is the one referenced above in the emails with JOHNS via **TARGET ACCOUNT 1** about the missing extra pills.

17.     On March 19, 2018, at approximately 10:28 a.m., with the permission of Holder's ex-wife, case agents acting in an undercover ("UC") capacity replied to JOHNS e-mail from

8

TARGET ACCOUNT 1 stating, "Hi Carl: Any update on the missing pills? I might place another order, could they be added? Hope to hear back on your thoughts...." At approximately 11:33 a.m., JOHNS, using the TARGET ACCOUNT 1, replied to the e-mail stating, "Hello Stephen, Great to see your email! What is the bets number to reach you on? Thanks Carl." Agents then provided JOHNS with an undercover phone number.

18.    On March 20, 2018, at approximately 9:59 a.m., case agents received a phone call on the UC recorded line from 737-874-2833. A male on the phone line identified himself as Carl JOHNS and proceeded to discuss the previous order involving the missing Ambien and Klonopin pills. JOHNS offered the UC another order of Ambien and Klonopin with bonus pills added to make up for the previous issue. JOHNS stated the UC would receive an email to complete the transaction. JOHNS did not ask the UC to provide prescriptions for Ambien and Klonopin. Case agents are aware that Ambien and Klonopin are controlled substances. Based on conversations with Holder's ex-wife and girlfriend, he abused drugs. According to records from the Drug Enforcement Administration, case agents are aware that Holder did not have valid a prescription for Klonopin. Holder at some time possessed a valid prescription for Ambien, which was filled at pharmacies in Oconomowoc, Wisconsin but never online. Therefore, based on their training and experience, and the investigation to date, case agents believe that JOHNS, user of TARGET ACCOUNT 1, proposed to illegally distribute controlled substances to the UC.

19.    That same day, at approximately 10:07 a.m., case agents received an email from Michael Richardson ("RICHARDSON") at **michaelrichardsonph@gmail.com** ("**TARGET ACCOUNT 2**"). The email stated, "Hello. Here is the link to make a payment for your order please click the link, then press the Blue button 'make payment' that is in the beginning of the

9

page and follow instruction. If you have any difficulties or any questions feel free to mail me back or call me back at 1-877-688-9376 and ask for Michael Richardson. Regards, Michael."

20.     A review of the link sent by RICHARDSON shows an invoice from "Koenig, LLC" in the amount of $697 for a "Gift Card". Case agents believe JOHNS and RICHARDSON are utilizing Koenig.com to receive payments for these illegally obtained medications.

21.     On March 22, 2018, at approximately 12:12 p.m., case agents received an email from Ann Moore ("MOORE") at **ann.moore455@gmail.com** ("**TARGET ACCOUNT 3**"). The email stated, "Hello, This is Ann, your agent from the pharmacy. I hope you're well. Quick note- the package you got last time, is on sale now – 15% more pills for less price! Should I give you specifics here? Thanks! Ann." At approximately 12:14 p.m., the undercover agent replied via Holder's e-mail, "Yes what are the prices?" At approximately 12:15 p.m., MOORE replied from **TARGET ACCOUNT 3** stating, "Hi Stephen, You're still interested in Tramadol, right? Kind regards, Ann." At approximately 12:49 p.m., the undercover agent replied via Holder's e-mail, "Yes that's correct." At approximately 12:56 p.m., MOORE replied from **TARGET ACCOUNT 3** stating, "Alright, The options that I have for you are: Option 1: 360 + 20 pills for $485, Option 2: 440 + 20 pills for $557, Option 3: 720 + 50 pills for $884. Prices are flat (include handling, shipping\, and insurance). Please let me know what option you want to go with. Ann."

22.     On March 23, 2018, at approximately 9:55 a.m., the undercover agent replied via Holder's e-mail, "Ann: Is the shipment from the US? I need these meds soon. Regards, Stephen." At approximately 10:13 a.m., MOORE replied from **TARGET ACCOUNT 3** stating, "Hi Steven, the options I have sent you are for the Tramadol that's coming from India. The options for Tramadol that's shipped within the US are: Option 1: 360 + 40 pills for $673, Option 2: 440 + 40 pills for $753, Option 3: 720 + 60 pills for $1135. Please let me know which of the options you

10

want to go with, Kind regards, Ann." At approximately 12:18 p.m., the undercover agent replied via Holder's email, "I would be interested in the US shipments, how do you accept payments? Of course I would be looking to be discreet if possible. Stephen." At approximately 12:22 p.m., MOORE replied from **TARGET ACCOUNT 3** stating, "Sure, Stephen, We do accept both Visa and MasterCard, but in case you want to keep the transaction discreet, we could use a direct transfer through Western Union or MoneyGram. We also accept bitcoin. Are you familiar with either of the transfer methods?" At approximately 4:12 p.m., the undercover agent replied via Holder's email, "Ann: I would prefer Western Union, I can send it out early next week when I'll need to reorder. I will be needing the 360+40 pills located in the US for faster shipping. Regards, Stephen." At approximately 4:15 p.m., MOORE replied from **TARGET ACCOUNT 3** stating, "Alright, I'll reserve the package for you and will send you the Western Union details in the next 5-8 minutes. Just to make sure, your shipping address is still: 1346 Bluebird Dr, Oconomowoc, WI 53066, right?" At approximately 4:58 p.m., MOORE replied from **TARGET ACCOUNT 3** stating, "Stephen, Here is the receiver's information from the Western Union transfer: Fist Name: VIKTOR, Last Name: MALCHUK, City: Kiev, Country: Ukraine, Total amount: $673. As soon as the payment is submitted, please provide me with the 10-digit MTCN number. Please confirm you received this email, Regard, Ann Moore, American Pharmacies Online." MOORE, user of **TARGET ACOUNT 3**, did not ask the UC to provide a prescription for Tramadol.

23.     Case agents are aware that Tramadol is a controlled substance. According to records from the Drug Enforcement Administration, case agents are aware that Holder did not have valid prescription for Tramadol. Therefore, based on their training and experience, and the investigation to date, case agents believe that MOORE, user of **TARGET ACCOUNT 3**, proposed to illegally distribute controlled substances to the UC.

11

24.  Based on the above information, case agents believe "Carl JOHNS," "Michael RICHARDSON," and "Ann MOORE" are unknown individuals working on behalf of AMERICAN PHARMACIES ONLINE. JOHNS utilizes the **TARGET ACCOUNT 1**, and RICHARDSON utilizes **TARGET ACCOUNT 2,** and MOORE utilizes the **TARGET ACCOUNT 3** in furtherance of the conspiracy.

25.  Additionally, while reviewing Holder's cellular telephone, case agents discovered an email received on March 14, 2018, at approximately 2:23 p.m. from Benjamin SMITH ("SMITH") at **Benjamin.pcdirect@gmail.com** ("**TARGET ACCOUNT 4**"). The email stated, "Hi Stephen, I hope this email find well! I am writing to check if you need a refill for the Tramadol. Have a great day, Benjamin Smith. Personal Customer Service Representative. Pharmacy Care Direct."

26.  With the permission of Holder's ex-wife, case agents acting in an undercover capacity replied to SMITH's email from **TARGET ACCOUNT 4** on March 19, 2018, at approximately 10:39 a.m., stating, "How much?" At approximately 10:48 a.m., SMITH using **TARGET ACCOUNT 4** replied, "Hi Stephen, Here are the prices: 90 tablets = $149 + 10 tablets as bonus, 120 tablets = $169 + 20 tablets as bonus, 180 tablets = $209 + 40 tablets as bonus, 360 tablets = $349 + 60 tablets as bonus. You can order as much as you want, also you will be free of charge for shipping and handling fees. Have a great day, Benjamin Smith." At approximately 11:02 a.m., the undercover agent replied via Holder's e-mail, "Located in the US??" At approximately 11:09 a.m., SMITH using **TARGET ACCOUNT 4** replied, "We are located in Toronto, Canada (we use (sic) to be in Delaware, hence the 302 number) The medication comes from overseas (like every generic), from India. Have a great day, Benjamin Smith." Based on the above communications, case agents believe SMITH is utilizing **TARGET ACCOUNT 4** in

12

furtherance of illegal distribution of controlled substances, from an unidentified website. At this point in the investigation, it is unclear how, if at all, SMITH is related to AMERICAN PHARMACIES ONLINE. SMITH did not ask the UC to provide a prescription for Tramadol. As discussed above, according to records from the Drug Enforcement Administration, case agents are aware that Holder did not have valid prescription for Tramadol, which is a controlled substance. Therefore, based on their training and experience, and the investigation to date, case agents believe that SMITH, user of **TARGET ACCOUNT 4**, proposed to illegally distribute controlled substances to the UC.

27.     Based on my training and experience, individuals who engage in interstate trafficking in controlled and non-controlled pharmaceuticals via the internet will communicate and send and receive information through electronic communication such as e-mails and chats. Individuals engaged in criminal activity via the internet often remain anonymous by providing inaccurate or false information, but will often use e-mail accounts to conduct business and/or communicate with other co-conspirators. The true identity and location of these individuals can often be found by analyzing their e- mail communication and IP connection logs.

28.     In general, an e-mail that is sent to a Google subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on Google's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on Google's servers for a certain period of time.

## IV.     BACKGROUND CONCERNING E-MAIL

29.     In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("e-mail") access, to the public. Google allows subscribers to obtain e-mail accounts at the domain name gmail.com. Subscribers obtain an account by

13

registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and un-retrieved e-mail for Google subscribers) and information concerning subscribers and their use of Google's services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

30. In addition to email, Google offers its users a number of other online services. A list of those services and their features is available at the following URL: https://support.google.com/.

31. In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

32. In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage

14

of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

33.     In my training and experience, in some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

34.     This application seeks a warrant to search all responsive records and information under the control of Google, a provider subject to the jurisdiction of this court, regardless of where Google has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Google's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

15

## V.    CONCLUSION

35.     probable cause to believe that violations of violations of Title 21, United States Code, Sections 829(e), 841(a)(1), and 846 (Distribution of Controlled Substances), and Title 21, United States Code, Sections 841(h) and 843(c)(2)(A) (Offenses involving distribution of Controlled Substances by means of the Internet) have been committed by the users of **TARGET ACCOUNT 1, TARGET ACCOUNT 2, TARGET ACCOUNT 3**, and **TARGET ACCOUNT 4** including, but not limited to, "Carl Johns," "Michael Richardson," "Ann Moore," and "Benjamin Smith." There is also probable cause to search the locations described in Attachment A for fruits, evidence and instrumentalities of these crimes further described in Attachment B.  Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following email addresses that are stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway in Mountain View, California.

**Target Account 1: johns.carl35@gmail.com**

**Target Account 2: michaelrichardsonph@gmail.com**

**Target Account 3: ann.moore455@gmail.com**

**Target Account 4: Benjamin.pcdirect@gmail.com**

# ATTACHMENT B

## Particular Things to be Seized

### I.    Information to be disclosed by Google (the "Provider")

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A, for the time period of January 1, 2018 to the present:

a.    The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.    The types of service utilized;

d.    All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

2

e.    All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken;

f.    All communications, in whatever form, and other information from Google Hangouts associated with the account;

g.    All information and documents from Google Docs associated with the account;

h.    All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Google; and

i.    For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

The Provider is hereby ordered to disclose the above information to the government within fourteen days of the issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 829(e), 841(a)(1), 841(h), 846, and 843(c)(2)(A) and occurring after January 1, 2012, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.    The importation and distribution of controlled substances and other prescription medications.

b.    Information relating to the identity of any and all individuals who operate or maintain online pharmacies that sell controlled substances and other prescription medications.

c.    Records of payment made in relation to the operation and maintenance of online pharmacies that sell controlled substances and other prescription medications, including proceeds from such sales.

d.    Information relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

4